IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Terrance V. Smith, #292962, | ) | C/A No.: 1:13-722-DCN-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden Michael McCall, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Terrance V. Smith is an inmate at the Lee Correctional Institution of the South Carolina Department of Corrections who filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(c) (D.S.C.) for a Report and Recommendation on Respondent's return and motion for summary judgment [Entry #9, #10]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion by June 27, 2013. [Entry #11]. The court granted Petitioner four extensions to file a response, with a final response deadline of October 18, 2013. [Entry #15, 18, 21, 24]. Petitioner failed to file a response.

Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion for summary judgment be granted.

1

I.      Factual and Procedural Background

On July 28, 1999, Petitioner and three others robbed a grocery store in Cayce, South Carolina, while armed with guns. [Entry #9-1 at 5]. They left in a car and subsequently switched to a rental car. *Id.* at 7. The grocery store owner's son followed the robbers and obtained the license plate of the rental car. *Id.* The police investigation revealed that the girlfriend of one of the robbers had rented the car, and she provided police details of the planning and execution of the armed robbery. *Id.* at 7–8. The robbery was captured on video surveillance. *Id.* at 8. Two of the robbers cooperated and pled guilty to attempted armed robbery, *id.* at 9, apparently receiving approximately six or seven years each, *id.* at 14. Petitioner evaded police, ultimately surrendering on February 22, 2000.[1] *Id.* at 8.

On January 22, 2003, Petitioner waived his right to grand jury presentment and pled guilty to one count of armed robbery before the Honorable Marc H. Westbrook, Circuit Court Judge (2003-GS-32-130). [Entry #9-2 (guilty plea transcript), #13-1 (indictment waiver), #9-1 at 103 (sentencing sheet)]. He was represented by William F. Gorski, Esq. *Id.* On April 16, 2003, Judge Westbrook sentenced Petitioner to 20 years' imprisonment. [Entry #9-1 at 15]. At the end of the sentencing hearing, Petitioner moved for reconsideration of his sentence, and Judge Westbrook took the motion under advisement.

---

[1] During the time Petitioner was at large, he was implicated in another armed robbery and murder. *Id.* A few weeks after being sentenced for armed robbery of the grocery store, Petitioner was convicted by a jury of, *inter alia*, armed robbery, murder, ABWIK, attempted armed robbery, burglary 1st, and received life without parole ("LWOP") pursuant to South Carolina's recidivist statute, S.C. Code Ann. § 17-25-45 (a/k/a "Two Strikes law"). [Entry #9-1 at 97–102 (sentencing sheets)].

*Id.* It appears that the motion for reconsideration was never decided. *Id.* at 25. Petitioner did not file a direct appeal. *Id.* at 21.

On January 21, 2004, Petitioner filed an application for post-conviction relief ("PCR") asserting claims of ineffective assistance of counsel and involuntary guilty plea in the grocery store robbery. [Entry #9-3]. A PCR evidentiary hearing was held before the Honorable Clyde N. Davis, Circuit Court Judge, on October 19, 2005, at which Petitioner and his counsel, James P. Rogers, Esq. appeared.[2] After briefing from the parties on whether the PCR application was premature in light of the then-still-pending motion for reconsideration [Entry #9-5, #9-6], the PCR court entered an order of dismissal without prejudice on March 10, 2006, finding Petitioner's PCR application was premature [Entry #9-7].

On January 17, 2007, Petitioner filed a second PCR application asserting claims of ineffective assistance of counsel, involuntary guilty plea, and lack of trial court subject matter jurisdiction. [Entry #9-1 at 20–30]. In his second PCR application, Petitioner noted that he had still not received a ruling on the motion for reconsideration, but that he waived the motion to enable him to proceed at PCR. *Id.* at 29.

On April 5, 2007, the Honorable James W. Johnson Jr., Circuit Court Judge, filed a conditional order of dismissal, finding the application was untimely and successive and giving Petitioner 20 days to explain why the application should not be dismissed as

---

[2] The PCR hearing is referenced in the Order of Dismissal, Entry #9-7 at 1. The undersigned has been unable to find a copy of the transcript of this PCR hearing in the record.

untimely and successive. [Entry #9-9]. Petitioner filed a *pro se* response noting that his first PCR application had been dismissed without prejudice. [Entry #9-11 at 6]. On May 31, 2007, the PCR court filed an order vacating the conditional order of dismissal. [Entry #9-12].

On February 5, 2010, a PCR evidentiary hearing was held before the Honorable R. Lawton McIntosh, Circuit Court Judge, at which Petitioner and his counsel, David B. Betts, Esq. appeared. [Entry #9-1 at 37–85]. Petitioner primarily argued that plea counsel was ineffective in allowing him to plead guilty to the armed robbery in light of the pending murder charge. *Id.* at 43–44. Petitioner also argued that his guilty plea was involuntary. *Id.* at 44. The PCR court filed an order of dismissal on April 26, 2010. [*Id.* at 86–96].

Petitioner timely appealed from the denial of PCR on May 12, 2010. [Entry #9-13]. He was represented by Appellate Defender Robert M. Pachak of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, who filed a *Johnson* petition[3] for writ of certiorari in the South Carolina Supreme Court on or about October 21, 2010, raising the following issue: "Whether Petitioner's guilty plea was voluntarily knowingly entered into?" [Entry #9-14 at 3]. Petitioner's counsel asserted that the petition

---

[3] *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988) (applying the factors of *Anders v. California*, 386 U.S. 738 (1967), to post-conviction appeals). *Anders* requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal, furnish a copy of that brief to the defendant, and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. *Anders*, 386 U.S. at 744.

was without merit and requested permission to withdraw from further representation. [*Id.* at 7]. Petitioner did not file a *pro se* brief.

By order filed January 17, 2013, the South Carolina Supreme Court denied the petition for certiorari and granted counsel's request to withdraw. [Entry #9-17]. The remittitur issued on February 6, 2013. [Entry #9-18].

II.    Discussion

Petitioner filed this federal petition for a writ of habeas corpus on March 16, 2013. [Entry #1].[4]   Petitioner raises the following grounds in his petition:

**Ground One:**      Counsel was constitutionally ineffective in violation of my United States 6th amendment constitutional right for failing to inform me that I was signing a written waiver of indictment.

Supporting facts: Before my plea of guilty counsel informed me to sign many different documents without explanation. He explained that I was pleading guilty to the same offense and receiving the same time as my co-defendants. However once the guilty plea started I realized that the Judge said I signed a waiver of presentment to the Grand Jury. The waiver that was actually on the indictment was illegible because of a poor stamp. I never intentionally gave up my right to have my case heard by the Grand Jury. Also there was an original indictment that my Attorney William Gorski never viewed either.

**Ground Two:**      Counsel was constitutionally ineffective in violation of my United States 6th amendment constitutional right for inducing me to plead guilty with the promise that I would receive the same plea and sentence as my co-defendants.

---

[4]  The petition was received by the court on March 18, 2013, and docketed on March 19, 2013. However, because Petitioner is incarcerated, he benefits from the "prison mailbox rule." *Houston v. Lack*, 487 U.S. 266 (1988). The envelope containing the petition was deposited in the prison mailing system on March 16, 2013. [Entry #1-2 at 2].

Supporting facts: Prior to me pleading guilty Counsel William Gorski informed me that Co-defendants Larry Romey and Ceaser Bell would plead guilty and receive the same sentence as me. However after I pled guilty my Co-defendants Ceaser Bell and Larry Romey pled guilty to lesser offenses and Larry Romey received seven years while Ceaser Bell received five. Had I known that my Lawyer was giving me incorrect advice I would have chosen not to plead guilty and would have went to trial.

**Ground Three:** Counsel was constitutionally ineffective in violation of my United States 6th amendment constitutional right for not objecting to the prosecutor requesting a substantial sentence in violation of the negotiated plea agreement.

Supporting facts: When I pled guilty I signed a negotiated plea agreement to armed robbery facing ten to thirty years. The prosecutor agreed not to make a sentence recommendation. However at sentencing another prosecutor represented the State. He recommended a substantial sentence in violation of the original plea agreement.

[Entry #1 at 16–17].

A.      Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage,

the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

B.      Habeas Corpus Standard of Review

1.      Generally

Because Petitioner filed his petition after the effective date of the AEDPA, review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410. Moreover, state court

factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2. Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a. Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B) (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR.   State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976).   If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP.   Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C.

2007).[5] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

The United States Supreme Court has held that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"—which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). This opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran,* 220 F.3d 276, 289 (4th Cir.2000) (citing *Matthews v. Evatt,* 105 F.3d 907, 911 (4th Cir.1997) (internal quotation marks omitted)). That is to say, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir.1994) (citation and internal quotation marks omitted).

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy,* 559 S.E.2d 850 (S.C. 2002); *see also In re*

---

[5] In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

*Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases,* 471 S.E.2d 454 (S.C. 1990). The *McKennedy* court held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court *"outside* of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan*." 559 S.E.2d at 854.   As such, it is an "extraordinary" remedy under *O'Sullivan*, "technically available to the litigant but not required to be exhausted," *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003).

Because the South Carolina Supreme Court has held that presentation of certain claims to the South Carolina Court of Appeals without more is sufficient to exhaust state remedies, a claim is not procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals.

b.      Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986), *superseded by statute on other grounds* (AEDPA).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In

such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### 3. Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the states courts in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

### C. Analysis

#### 1. Procedural Bar

As an initial matter, Respondent argues that Petitioner procedurally defaulted on his

claims in Grounds One, Two, and Three. In Ground One, Petitioner asserts that trial counsel was ineffective in not advising him that he was signing a waiver of presentment of indictment to the grand jury. In Ground Two, Petitioner asserts trial counsel was ineffective for having advised him to plead guilty so that he could obtain a conviction and sentence similar to two of his codefendants. In Ground Three, Petitioner asserts trial counsel was ineffective for not objecting to the solicitor's request for a substantial sentence, which Petitioner says was in violation of a negotiated plea agreement.

Although appearing to concede that Petitioner raised these claims in his first PCR application and/or PCR hearing, Respondent argues that these claims were not ruled upon by the PCR court, and are, therefore, unavailable for further collateral review, citing *Pruitt v. State*, 423 S.E.2d 127 (S.C. 1992) (issue must be raised to and ruled on by the PCR judge in order to be preserved for review); *Plyler v. State*, 424 S.E.2d 477 (1992) (same); Rule 59(e), S.C.R.C.P. (providing avenue for any party to move to alter or amend a judgment); and *Bostick v. Stevenson*, 589 F.3d 160, 164 (4th Cir. 2009) (acknowledging same applied consistently and regularly in South Carolina after *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007)). Respondent argues that, as a result, these claims were not properly presented to the South Carolina Supreme Court, and the South Carolina state courts would find them procedurally defaulted if Petitioner attempted to raise them now. Therefore, Respondent argues that these claims are procedurally barred in federal habeas corpus. *Coleman v. Thompson*, 501 U.S. 722 (1991). Further, Respondent argues that Petitioner cannot show cause and prejudice for his procedural default or that failure to review the claims will result

14

in a fundamental miscarriage of justice.

2.      Cause and Prejudice

The undersigned finds that Petitioner has shown sufficient cause and prejudice to excuse the default of Grounds One, Two, and Three.  The existence of cause must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's or the defendant's efforts to comply with the State's procedural rule. *Murray*, 477 U.S. at 488.

In his first PCR, Petitioner raised claims of ineffective assistance of counsel and involuntary guilty plea [Entry #9-3 at 3], but because the sentencing court had not ruled on his motion for reconsideration for the nearly three years it had been pending, Petitioner's first PCR application was dismissed without prejudice as premature on March 10, 2006.[6] Petitioner filed his first PCR on January 21, 2004—almost a year after his guilty plea—"out of an abundance of caution to avoid any prejudice or harm . . . until the motion [for] reconsideration of sentence be resolved." [Entry #9-11 at 4].  As of April 16, 2007—four years after his counsel moved for reconsideration of his sentence, Petitioner noted that no hearing had been scheduled on the motion [*id.*], although the PCR judge had indicated by letter dated December 22, 2005, that "the matter is to be scheduled by the Clerk for a hearing on the pending Motion for Reconsideration. The State to prepare a proposed order." [*Id.* at 7].  Petitioner has also provided a copy of a letter dated February 23, 2006,   from his PCR counsel, James P. Rogers, Esq., in which Mr. Rogers represented

---

[6] The undersigned notes that the sentencing judge died in an accident on September 14, 2005.

that he "will be working with the Clerk to get that hearing scheduled as soon as" he could. [*Id.* at 8].   Apparently, the motion for reconsideration was never ruled upon, and Petitioner ultimately withdrew it in January 2007 to be able to pursue PCR. [Entry #9-1 at 29]. In light of Petitioner's diligence in presenting his claims to the state court at PCR, albeit without resolution through no fault of his own, the undersigned finds it appropriate to consider his claims on the merits. Petitioner has been prejudiced by the State and the state court's failure to handle his motion for reconsideration in a timely manner so as to have permitted his PCR claims to have been properly considered.

### 3.    Ineffective Assistance of Counsel Claims

To prevail on his ineffective assistance of counsel claims, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding

was fundamentally unfair or unreliable. *Harrington*, 131 S.Ct. at 787–88; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 131 S.Ct. at 788 (*quoting Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 131 S.Ct. at 788. In such circumstances, the "question is not whether counsel's actions were unreasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of fairminded disagreement." *Id.* at 787. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id., quoting Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)).

4.    Merits Review

a.    Grounds One

In Ground One, Petitioner asserts that trial counsel was ineffective for not advising him that he was signing a waiver of presentment of indictment to the grand jury.

In ruling on his claims in Petitioner's second PCR, the PCR court found as follows:

> Applicant's final allegation is that the plea court lacked subject matter jurisdiction based on an allegedly involuntary waiver of presentment. Applicant asserts that he did not know the difference between a grand jury and a petit jury and would have required presentment if he had known. This Court finds that this claim is without merit. It is noted that the Applicant signed a written waiver of his presentment of the indictment to the grand jury. As such, this Court finds that Applicant's argument is unpersuasive and fails to meet the burden of proof required in his action, having shown neither ineffective assistance of counsel nor resulting prejudice.

[Entry #9-1 at 94].

Petitioner asserts that plea counsel was ineffective because counsel did not advise him that he was waiving presentment of his indictment. He claims that he never intentionally gave up his right to have his case heard by the grand jury. A review of the guilty plea transcript belies Petitioner's assertions, as follows:

The Court:    I note in here that you have given up the right to have this heard by the grand jury.   Do you understand you don't have to do that?   If you want it heard by the grand jury, all you have to do is just say so, and we will go no further and will not take any further action until the grand jury has heard that.   Do you understand that?
Petitioner:    Yes, sir.
The Court:    Understanding that, do you want to waive action or give up action by the grand jury and let this Court have jurisdiction now?
Petitioner:    Yes, sir.
The Court:    Have you talked with your lawyer about that?
Petitioner:    Yes, sir.
The Court:    Do you understand that you don't have to plead guilty, Mr. Smith? You have a right to plead not guilty, and you can have a jury trial.   Do you understand that?
Petitioner:    Yes, sir.

[Entry #9-2 at 5–6].

Absent clear and convincing evidence to the contrary, Petitioner is "bound by the representations made during his plea colloquy." *Beck v. Angelone*, 261 F.3d 377, 396 (4th Cir. 2001)(internal quotations and citations omitted). The foregoing plea colloquy demonstrates that Petitioner acknowledged that (1) he understood that did not have to give up his right to have his case heard by the grand jury, (2) he wanted to waive presentment to the grand jury, and (3) he talked with counsel about waiving presentment to the grand jury.

At PCR, plea counsel also testified that he spoke with Petitioner about waiving presentment of the indictment to the grand jury, and he told Petitioner the same thing that he tells everyone about waiver of the indictment. [Entry #9-1 at 72–73]. Counsel noted that he tells everyone that waiving his right to have the grand jury hear the case most of the time is not a big deal because the grand jury typically only hears what the State presents to it, and the grand jury usually indicts anyway. *Id.* at 73.

Petitioner cannot show that the state court unreasonably applied federal law in denying relief on this claim of ineffective assistance of counsel or made an unreasonable determination of the facts in denying relief on this claim. Petitioner's testimony at the plea hearing and counsel's testimony at the PCR hearing reflect that Petitioner had the advice of counsel concerning the waiver of presentment of the indictment to the grand jury. Further, Petitioner cannot establish that he was prejudiced by any error of counsel in failing to advise him regarding his waiver of presentment, as any error was cured by the colloquy with the plea judge. *See Wolfe v. State*, 485 S.E.2d 367 (S.C. 1997) (even if counsel gives erroneous advice, an applicant is not entitled to PCR where any misconceptions are cured

by the colloquy during the guilty plea proceeding); *Burnett v. State*, 576 S.E.2d 144 (S.C. 2003) (any possible misconceptions on PCR applicant's part were cured by the colloquy during the plea proceeding).

For the foregoing reasons, Petitioner cannot establish that he is entitled to federal habeas relief on Ground One under 28 U.S.C. § 2254(d), and the undersigned recommends that this claim be denied and dismissed with prejudice.

b.      Ground Two

In Ground Two, Petitioner asserts trial counsel was ineffective for advising him to plead guilty to obtain a sentence similar to two of his codefendants. Petitioner asserts that plea counsel was ineffective because he allegedly told Petitioner that he would receive the same sentence as his two codefendants, but they pled guilty to lesser offenses and received seven and five year sentences.   Petitioner claims that had he known that plea counsel was giving him incorrect advice, he would have chosen to proceed to trial.

A review of the guilty plea transcript does not support Petitioner's claims:

The Court:      Are you pleading guilty of your own free will, Mr. Smith?
Petitioner:     Yes, sir.
The Court:      Has anybody promised you anything or threatened you in any way to get you
                to plead guilty, other than anything your lawyer has talked about with the
                solicitor?
Petitioner:     No, sir.
The Court:      Do you admit you are guilty?
Petitioner:     Yes, sir.

[Entry #9-2 at 4].

The Court:      Anything else, Mr. Gorski, before I decide whether to accept the plea or not?
Mr. Gorski:     Just to put on the record, Your Honor, my client is pleading straight up to
                these charges.   He is not—the State has not offered a plea bargain in

|            |                                                                 |
|------------|-----------------------------------------------------------------|
|            | exchange for my client's testimony or anything like that.   I just want that on the record. My client wants the court to know that he is pleading straight up, but he is not pleading in exchange for a promise to later testify. |
| The Court: | Do you understand that, Mr. Smith, no promises?                 |
| Petitioner: | Okay.  I just wanted everyone to know that I am pleading because I did commit the robbery.  I wanted to apologize to the public and also to the Courts for my behavior. |
| The Court: | But you understand though, as I understand, that there are no promises about what happens in the future? Do you understand that? |
| Petitioner: | Yes, sir.                                                       |
| The Court: | And do you still want to plead guilty?                          |
| Petitioner: | Yes, sir.                                                       |

[*Id.* at 11–12].

The PCR court addressed a different aspect of Petitioner's claim of ineffective assistance of counsel and involuntary guilty plea.   First, the PCR court found that counsel was not ineffective for allowing Petitioner to plead guilty, as follows:

> Applicant argues that Counsel was ineffective for allowing Applicant to plead guilty to a most serious crime while murder charges were pending, thereby subjecting Applicant to a second most serious charge and a sentence of life without the possibility of parole (LWOP). Applicant asserts that there was no advantage to him in pleading guilty, and that Counsel should have moved to be relieved in lieu of allowing the Applicant to go forward.

> Applicant further testified that he informed Counsel that he wished to go to trial on both the armed robbery charge and the murder charge. However, Applicant acknowledged being offered and rejecting a concurrent plea offer of thirty (30) years for both charges. Further, Applicant admitted that Counsel explained the possibility of LWOP due to the pending charges prior to his plea. Moreover, Applicant acknowledged that sentencing on his plea was delayed in order to get him to also plead to the other charge and avoid LWOP.

> Counsel testified that he explained LWOP to the Applicant. He testified that Applicant rejected the concurrent plea offer that would have covered all charges. Counsel stated that Applicant was simply remorseful for the armed robbery and wanted to take responsibility for his actions. He testified that Applicant was insistent on pleading guilty even after his contrary advice

regarding the possibility of LWOP. According to Counsel, Applicant was convinced he would "beat the murder charge."

With respect to this claim, this Court finds that the Applicant has failed to meet his burden of proof. This Court finds Counsel's testimony that he explained the possibility of LWOP to the Applicant and further advised him against pleading guilty to the armed robbery charge, but that Applicant was insistent on pleading, to be credible while simultaneously finding Applicant's testimony on the issue not to be credible. This Court finds that the Applicant was advised against pleading guilty, knew of the dangers in pleading guilty, and was nonetheless insistent upon doing so.

Further, this Court notes that the Applicant's plea was split into two parts solely to give the Applicant more time to consider pleading guilty to the murder charge as well to avoid life without parole. Therefore, this Court finds that the Applicant is unable to show ineffective assistance of counsel for allowing Applicant to plead guilty when the possibility of life without parole existed. Additionally, this Court notes that the Applicant turned down a plea offer that specifically would have avoided LWOP. Moreover, this Court notes that the pending murder charge was also a most serious offense and, as a result, upon his conviction for murder, Applicant still would have been subject to LWOP for the armed robbery charge. As such, even if the Applicant could prove ineffective assistance, he could not show resulting prejudice. Accordingly, this allegation is denied and dismissed.

[Entry #9-1 at 91–92].

Then, the PCR court found that the guilty plea itself was not involuntary, as follows:

Applicant further argued that his guilty plea was not knowingly and voluntarily entered. Counsel testified that he met with the Applicant on numerous occasions, both alone and with the assistance of another attorney. Counsel testified that they discussed the charges against the Applicant, including the pending murder charge. Counsel testified that Applicant was always remorseful about the armed robbery and wished to take responsibility for his actions.

Counsel testified that he explained to the Applicant the possible punishments he faced, including the possibility of life without parole. Counsel also testified that he explained 'most serious' and the two and three strikes rule to the Applicant. Counsel testified that he explained to the Applicant his constitutional rights, including his right to a jury trial. Counsel further

testified that the Applicant seemed to understand these discussions. Counsel went on to testify that he actually advised the Applicant against pleading guilty, or at least accepting a plea deal wherein he was not subject to a possible LWOP. However, Counsel testified that the Applicant was not receptive to this advice, and ultimately made his own choice to plead guilty to the armed robbery charge.

With respect to this claim, this Court finds that the Applicant has again failed to meet his burden of proof. This Court finds Counsel's testimony that he explained the charges, the possible sentences including LWOP, and the Applicant's constitutional rights to be credible, while simultaneously finding Applicant's testimony on these issues not to be credible. Further, this Court finds Counsel's testimony that he advised the Applicant against pleading guilty, but that Applicant felt remorseful and wanted to take responsibility, to be credible. On this point, this Court notes that due to the age of the case, it was unable to have before it a copy of the guilty plea transcript.[7] However, it does have a copy of the sentencing transcript, and notes that it is informative. When given a chance to speak to the court, the Applicant gives a fairly lengthy apology to the court and the victims of the crime. (Tr. p. 12, line 23—p. 13, line 5). This Court further notes that there was ample evidence of the Applicant's guilt, including statements of coconspirators, a videotape, and eyewitnesses to the crime. It appears to this Court that, faced with such a great deal of evidence of his guilt, and believing that he could "beat" the murder charge, the Applicant simply chose to ignore Counsel's advice and enter a guilty plea. This Court finds that Applicant's plea was entered knowingly, intelligent, freely and voluntarily. Accordingly, this allegation is denied and dismissed.

[Entry #9-1 at 93–94].

The plea colloquy demonstrates that Petitioner acknowledged that (1) no one had promised him anything or threatened him in any way to get him to plead guilty, (2) he was pleading straight up on the armed robbery charge, and (3) he understood that there were no promises as to what would happen to him in terms of sentencing in the future on this charge. Nowhere in the sentencing transcript is there any indication that Petitioner would

---

[7] The guilty plea transcript was apparently found later, and it is docketed at Entry #9-2.

receive a sentence similar to that of his codefendants, although plea counsel argued to the court that a similar sentence would be appropriate. [Entry #9-1 at 13 ("The hand of one is the hand of all. This was a group effort, although I feel that Mr. Smith is not as culpable as Mr. Collins. I feel that his sentence should be in line with what Mr. Bell and Mr. Romey received.")].

At PCR, plea counsel testified that, against his recommendation, Petitioner wanted to plead guilty to the armed robbery [Entry #9-1 at 72], was "bound and determined to plead guilty" [*id.* at 76], and "wanted to show that he was taking responsibility for his actions" [*id.* at 75].

Petitioner cannot show that the state court unreasonably applied federal law in denying relief on this claim of ineffective assistance of counsel or made an unreasonable determination of the facts in denying relief on this claim. Petitioner's testimony at the plea hearing and counsel's testimony at the PCR hearing reflect that Petitioner had the advice of counsel concerning the willfulness of his guilty plea, without any negotiations or promises of possible sentences. Further, Petitioner cannot establish that he was prejudiced by any error of counsel in failing to advise him regarding his possible sentence. *See Wolfe* and *Burnett*, supra.

For the foregoing reasons, Petitioner cannot establish that he is entitled to federal habeas relief on Ground Two under 28 U.S.C. § 2254(d), and the undersigned recommends that this claim be denied and dismissed with prejudice.

c.     Ground Three

In Ground Three, Petitioner asserts trial counsel was ineffective in not objecting to the solicitor's request for a substantial sentence, which Petitioner says was in violation of a negotiated plea agreement.   At sentencing, the solicitor stated:

> Your Honor, as far as prior records go, neither Defendant has any substantial prior record. In fact, I believe Mr. Smith's record is clean. Mr. Collins' record is mere driving stuff.   Your Honor, the State believes that these are two dangerous men.   We believe they have committed a heinous crime, and we are asking for a substantial sentence in this matter. That's all.

[Entry #9-1 at 12].

Petitioner specifically raised this issue in his first PCR application [Entry #9-1 at 74], which was not ruled on the merits.   Arguably, this claim is barred because Petitioner did not specifically raise it again in his second PCR application, aside from a general claim of ineffective assistance of counsel, and he did not otherwise file a Rule 59(e) motion.   *See Marlar*, *supra*.   However, the undersigned addresses the claim on its merits, in the event the district judge agrees that the state's mishandling of Petitioner's reconsideration motion constitutes sufficient cause and prejudice to overcome the procedural default.

The undersigned finds that Petitioner's claim in Ground Three does not afford him habeas relief.   A review of the plea colloquy noted in Ground Two above reveals that Petitioner admitted no one had promised him anything or threatened him in any way to induce him to plead guilty. In fact, Petitioner emphasized to the court that he was pleading straight up on the armed robbery charge and understood that there were no promises as to the sentence he would receive on the charge.

Petitioner has not provided any evidence to support his claim that there was a negotiated plea agreement, as he claims in Ground Three. Respondent argues that any reliance upon the sentencing sheet is misplaced [Entry #9 at 29], noting the holding in *State v. Rikard*, 638 S.E.2d 72 (S.C. App. 2006):

> The sentencing sheet offers three alternatives to designate the nature or status of the plea. Those alternatives provide that the plea is: (1) without negotiations or recommendation; (2) a negotiated sentence; or (3) a recommendation by the State. In this instance, the option of "without negotiations or recommendation" was selected by the solicitor, Rikard, and Rikard's counsel. It is axiomatic that the phrase "without negotiations or recommendation" means that the State and the defendant have not agreed on sentencing. Therefore, either party is free to request a favorable sentence.

Id. at 76.

At PCR, plea counsel testified that "not being happy with what [the solicitor] said," in requesting a substantial sentence [Entry #9-1 at 74].   However, there is no dispute that there was no negotiated plea agreement.

Petitioner has failed to show that there was any agreement or promise of any recommendation of a particular sentence or promise that the State would not request a substantial sentence. Therefore, he cannot demonstrate ineffective assistance of counsel. Having failed to show ineffective assistance, Petitioner cannot show an involuntary plea attributable to ineffective assistance. Further, the record supports the PCR court's ruling that Petitioner entered a knowing and intelligent plea, with the assistance of counsel, and with the opportunity to express mitigating circumstances. The United States Supreme Court has held that "while 'the governing standard as to whether a plea of guilty is

voluntary for purposes of the Federal Constitution is a question of federal law, and not a question of fact subject to the requirements of 28 U.S.C. § 2254(d),' the historical facts underlying such pleas are entitled to deference under the statute." *Sargent v. Waters,* 71 F.3d 158, 160 (1995) (quoting *Marshall,* 459 U.S. at 431–432).

Here, the record reflects the following colloquy took place:[8]

| | |
|---|---|
| The Court: | Mr. Smith, I understand you want to plead guilty to a charge of armed robbery; is that correct? |
| Petitioner: | Yes, sir. |
| The Court: | Do you understand that for armed robbery that you would get as much as 30 years in jail, but under the law you would have to get at least ten years? Do you understand no matter what happens you have got to get ten years? |
| Petitioner: | Yes, sir. |
| The Court: | Do you understand that it is also under our law classified as a most serious offense, which means under our two strikes law if you get another conviction like this, then you would face life without parole. That is what we call a pine box sentence, which means you leave the Department of Corrections when you die. Under South Carolina law, life means life. Do you understand that? |
| Petitioner: | Yes, sir. |
| The Court: | Solicitor, does he have a prior most serious offense? |
| Solicitor: | No, sir, but he has a pending charge of murder, burglary first degree, and either armed robbery or attempted armed robbery for an incident that took place after this. Those charges are still outstanding, and this plea would be a prior conviction for purposes of those charges, Your Honor. |
| The Court: | Yes, sir. Do you understand then, Mr. Smith, what that means is that if we accept this plea and you are convicted on this and you are later convicted of the murder or another armed robbery charge that you would be facing life without parole? Do you understand that? |
| Petitioner: | Yes, sir. |
| The Court: | And do you understand—understanding that, do you still want to plead guilty? |
| Petitioner: | Yes, sir. |

---

[8] Inexplicably, the transcript of the guilty plea was apparently not available to the PCR court in consideration of Petitioner's claims. [*See* Entry #9-1 at 93–94 ("[T]his Court notes that due to the age of the case, it was unable to have before it a copy of the guilty plea transcript.")].

| | |
|---|---|
| The Court: | Are you pleading guilty of your own free will, Mr. Smith? |
| Petitioner: | Yes, sir. |
| The Court: | Has anybody promised you anything or threatened you in any way to get you to plead guilty, other than anything your lawyer has talked about with the solicitor? |
| Petitioner: | No, sir. |
| The Court: | Do you admit you are guilty? |
| Petitioner: | Yes, sir. |
| The Court: | And at this time are you under the influence of any drugs or alcohol or medication of any kind? |
| Petitioner: | No, sir. |
| The Court: | Is there any medication you are supposed to taking that you are not taking? |
| Petitioner: | No, sir. |
| The Court: | Are you satisfied with your lawyer? |
| Petitioner: | Yes, sir. |
| The Court: | Have you had his advice in this matter? |
| Petitioner: | Yes, sir. |
| The Court: | Do you feel like he has done everything you have wanted him to? |
| Petitioner: | Yes, sir. |
| The Court: | I note in here that you have given up the right to have this heard by the grand jury. Do you understand you don't have to do that? If you want it heard by the grand jury, all you have to do is just say so, and we will go no further and will not take any further action until the grand jury has heard that. Do you understand that? |
| Petitioner: | Yes, sir. |
| The Court: | Understanding that, do you want to waive action or give up action by the grand jury and let this Court have jurisdiction now? |
| Petitioner: | Yes, sir. |
| The Court: | Have you talked with your lawyer about that? |
| Petitioner: | Yes, sir. |
| The Court: | Do you understand that you don't have to plead guilty, Mr. Smith? You have a right to plead not guilty, and you can have a jury trial. Do you understand that? |
| Petitioner: | Yes, sir. |
| The Court: | And do you understand if you had a jury trial, there would be certain rights available to you? |
| Petitioner: | Yes, sir. |
| The Court: | You would have a certain number of strikes with the jury. You can, to some degree, influence who gets on or does not get on the jury. Your lawyer could make an opening statement to the jury. The State would have to put up witnesses in open court, and your lawyer would be able to ask those witnesses questions. You would be able to testify if you wanted, but you |

| | |
|---|---|
| | wouldn't have to. Your lawyer would be able to make a closing statement to the jury, and there would be various motions that you could make along the way. Do you understand that? |
| Petitioner: | Yes, sir. |
| The Court: | And if you were convicted of the charge, it could be appealed to a higher court. Do you understand that? |
| Petitioner: | Yes, sir. |
| The Court: | Do you feel like you understand your rights to a jury trial? |
| Petitioner: | Yes, sir. |
| The Court: | Do you have any questions about it at all? |
| Petitioner: | No, sir. |
| The Court: | And understanding that, do you still want to give up your right to have it heard by a jury? |
| Petitioner: | Yes, sir. |
| The Court: | Understanding everything that I have asked, Mr. Smith, do you still want to plead guilty to armed robbery? |
| Petitioner: | Yes, sir. |
| The Court: | Do you understand that we will not sentence you today? The sentencing will come at another time. Do you understand that? |
| Petitioner: | Yes, sir. |
| The Court: | And understanding that, do you still want to plead guilty? |
| Petitioner: | Yes, sir. |

[Entry #9-2 at 2–8].

...

| | |
|---|---|
| Solicitor: | Just other one other matter, Your Honor. There actually is a true-billed indictment regarding this particular incident. We drew the new indictment up, the waiver one he is pleading on; and the reason we did that, Your Honor, is because it does, in fact, include not only Mr. Smith in it, but it includes the names of the other codefendants as well. He is pleading in fact to committing that armed robbery with those other individuals. |

[*Id.* at 10].

...

| | |
|---|---|
| The Court: | Anything else, Mr. Gorski, before I decide whether to accept the plea or not? |
| Mr. Gorski: | Just to put on the record, Your Honor, my client is pleading straight up to these charges. He is not—the State has not offered a plea bargain in exchange for my client's testimony or anything like that. I just want that on |

|  | the record. My client wants the court to know that he is pleading straight up, but he is not pleading in exchange for a promise to later testify. |
|---|---|
| The Court: | Do you understand that, Mr. Smith, no promises? |
| Petitioner: | Okay. I just wanted everyone to know that I am pleading because I did commit the robbery. I wanted to apologize to the public and also to the Courts for my behavior. |
| The Court: | But you understand though, as I understand, that there are no promises about what happens in the future? Do you understand that? |
| Petitioner: | Yes, sir. |
| The Court: | And do you still want to plead guilty? |
| Petitioner: | Yes, sir. |

[*Id.* at 11–12].

There is no basis in this record to overturn the findings of the state court. Viewing the record in its entirety, the record supports the state court's conclusion that Petitioner was aware of the constitutional rights that he was waiving and that he freely and voluntarily entered his guilty plea. *Evans v. Smith,* 220 F.3d 306, 312 (4th Cir. 2000) (federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding); *Williams,* 529 U.S. at 398; *Bell v. Jarvis,* 236 F.3d 149, 157–158 (4th Cir. 2009); 28 U.S.C. § 2254(e)(1) (determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence). *Sargent,* 71 F.3d at 160 (historical facts underlying guilty pleas are entitled to deference).

While Petitioner now alleges his plea was involuntary, "[r]epresentations of the Defendant, his lawyer and the prosecutor at [arraignment], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral

proceedings . . . The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison,* 431 U.S. 63, 73–74 (1977). Further, statements of the accused that facially demonstrate the plea's validity are conclusive absent compelling reasons why they should not be, such as ineffective assistance of counsel. *Via v. Superintendent, Powhatan Correctional Center,* 643 F.2d 167, 171 (4th Cir.1981). The undersigned can find no basis for a reversal of the state court's finding that Petitioner's guilty plea was voluntary. *Sargent,* 71 F.3d at 160.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Respondent's motion for summary judgment [Entry #10] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

October 24, 2013                                    Shiva V. Hodges
Columbia, South Carolina                            United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).